Miriam CASEY, et al., Plaintiffs,

v.

OHIO MEDICAL PRODUCTS, et al., Defendants.

No. C–93–0769–CAL.

United States District Court, N.D. California.

Feb. 28, 1995.

Marvin Stender, McTernan Stender Walsh, Weingus & Freeman, San Francisco, CA, for plaintiff.

Jeffrey A. Ross, R.D. Kirwan, Pillsbury Madison & Sutro, San Francisco, CA, Patrick C. Marshall, Pillsbury Madison & Sutro, San Jose, CA, for defendant Ohio Medical Products.

Stuart M. Gordon, Fletcher C. Alford, Gordon & Rees, San Francisco, CA, for defendant Wyeth–Ayerst Laboratories Div. of American Home Products Corp.

Julia Feliciano, Philadelphia, PA, for defendant Wyeth–Ayerst Laboratories etc.

Kenneth P. Barnum, Langley Lambert Barnum & Kreger, Los Altos, CA, for defendant Halocarbon Laboratories, Inc.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

LEGGE, District Judge.

Defendants have moved for summary judgment. The motion was opposed, argued and submitted for decision. The court has reviewed the moving and opposing papers, the extensive factual record submitted in support of and in opposition to the motion, the arguments of counsel, the record in the case, and the applicable authorities. The court concludes that there are no genuine issues of material fact on the matters discussed below, and that summary judgment must be granted in favor of defendants.

## I.

### A.

Plaintiffs' decedent, Dr. George Casey, was an anesthesiologist. He contracted chronic active hepatitis and died of that disease in 1992. (He and his estate are alternatively called "plaintiff" in this order). In 1977, while practicing medicine as an anesthesiologist, plaintiff was exposed for a short time to an anesthesia containing halothane.

Plaintiff sues the defendants who manufactured or sold the halothane and the containers in which it was sold and dispensed by plaintiff to patients. The complaint alleges negligence, strict tort liability, and breach of warranties.

A central question posed by this case, and more specifically by this motion, is whether plaintiff's exposure to halothane caused his illness and death.

### B.

The relevant discovery on the issue of causation has been conducted. Defendants now move for summary judgment on that issue, which if favorable to defendants must result in summary judgment in their favor on the entire case.

Defendants' motion for summary judgment properly raised the issue of causation, and the burden then shifted to plaintiff to demonstrate a genuine issue of material fact on whether halothane caused plaintiff's death. Plaintiff seeks to establish the necessary causation by the declaration of Dr. Robert Harrison, an occupational health physician. In this motion, defendants contend that (1) Dr. Harrison's opinion is inadmissible under Federal Rules of Evidence 702 and 703; and (2) even if his opinion meets the threshold requirements for admissibility, that evidence is insufficient to raise a genuine issue of material fact on causation.

### C.

This motion invokes the powers delegated to the district courts by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The *Daubert* standard has been further refined, and the procedures for its application further explained, by the U.S. Court of Appeals for this circuit on the remand of that case; *Daubert v. Merrell Dow,* 43 F.3d 1311 (9th Cir. 1995).

The term "causation" has two meanings here, both of which must be examined under *Daubert.* The first is general causation; that is in this case, whether halothane *can* cause chronic active hepatitis. The second is specific causation; that is in this case, if halothane can cause active hepatitis, whether it *did* cause plaintiff's chronic active hepatitis. *Daubert,* 43 F.3d at 1320–21.

So, to restate the question raised in this motion: has plaintiff shown through the declaration of Dr. Robert Harrison[1] that halothane caused, both generally and specifically, plaintiff's chronic active hepatitis? The first issue is whether Dr. Harrison's opinion, including the foundation and methodology on which it is based, is sufficient for admission into evidence under Federal Rules of Evidence 702 and 703. Second, if it is admissible is it sufficient to create a genuine issue of material fact on the cause of plaintiff's death. Those issues must be examined and resolved by this court under the steps defined by the U.S. Supreme Court and the Ninth Circuit in their *Daubert* decisions.

### D.

The responsibilities of district courts under *Daubert* are indeed heavy ones. The training of a judge is of course in law and not in medicine. While legal causation is a concept familiar to all trained in the law, from the first semester of law school, concepts of medical and scientific causation are not. Those are generally left to other professions, whose

---

1. Dr. Harrison's declaration was signed and submitted after the Supreme Court's *Daubert* decision, but before the Ninth Circuit's decision on remand. The circuit's decision came to the attention of both plaintiff and defendants before this date. Dr. Harrison's deposition was taken before the date of his declaration submitted in opposition to this motion. Both his declaration and deposition testimony are referred to in this order.

objectives are not the resolution of legal rights and duties but the diagnosis and treatment of patients. A court's analysis of medical causation necessarily forces a court to become as familiar as it can, with little or no scientific training, to understand the medical and scientific concepts. The vocabulary alone is daunting; and the danger of merely grabbing at words, and attaching too much significance to them, is very real.

The *Daubert* analysis also requires courts to focus heavily on what has occurred in the *past*, rather than what the *future* of medicine and science might be. And history has frequently taught that the conventional scientific wisdom of one generation is later looked upon as shocking ignorance by future generations.

Nevertheless, those are the burdens which have been placed upon the district courts by *Daubert*. And it is inherent in the litigation process that the work of specialists is weighed by generalists, be they juries or judges. Armed with a degree of intellectual curiosity inherent in district court judges, and guided by two centuries of reviewing the wisdom of other occupations, federal courts will perform the assigned task. Whether the *Daubert* analysis is ultimately viewed as "wise" law, or whether it promotes "good" science, must be answered at some time in the future.

## II.

■ The first step is to examine whether Dr. Harrison is an expert in a scientific field dealing with the subject of causation between halothane and plaintiff's liver disease. 43 F.3d 1311 at 1315–16; *Reference Manual On Scientific Evidence*, (Federal Judicial Center, 1994) ("Manual").

Dr. Harrison's declaration states that he is an occupational health physician. He is also an associate clinical professor in the division of occupational and environmental medicine at the University of California, and he has been a public health medical officer with the occupational health surveillance and evaluation program of the State of California, where he performs research on a variety of issues related to occupational health and occupational illness. His declaration states

that in the course of his work in that specialty, he has participated in the diagnosis and treatment of numerous individuals with liver injury caused by toxic exposures. His experience includes liver diseases and hepatitis.

Defendants argue that Dr. Harrison is not an expert who is qualified to express an opinion on causation in this case, because he is not an expert in hematology or toxicology. Certainly Dr. Harrison's declaration does not indicate that he is a qualified expert in those more specialized fields.

■ However, this court concludes that Dr. Harrison's education, qualifications, and work experience adequately qualify him as an expert who can express opinions on the issue of the causal connection, if any, between exposure to halothane and chronic active hepatitis. Dr. Harrison has educational and experience qualifications in a medical field that is relevant to the subject matter. He possesses sufficient expertise to enable him to give opinions on the causation issue which can assist the trier of fact. The fact that he is not an expert specifically in hematology or toxicology does not, in view of his other medical experience, disqualify him as an expert on the issue in this case.

## III.

■ The next step in the analysis is to define Dr. Harrison's opinion and to test it under the *Daubert* standards. As stated, his opinion must include both general causation (*can* halothane cause chronic active hepatitis) and specific causation (*did* plaintiff's exposure to halothane cause his chronic active hepatitis).

### A.

Dr. Harrison's opinion is that plaintiff's exposure to halothane in 1977 resulted in his contracting acute hepatitis. He then opines that this in turn triggered a reaction which caused the acute hepatitis to evolve into chronic active hepatitis even after plaintiff's exposure to halothane ended. Dr. Harrison states in his declaration that halothane is capable of causing chronic active hepatitis,

and that plaintiff's exposure to halothane caused plaintiff's chronic active hepatitis.

### B.

Although the focus under *Daubert* must be on the scientific reliability of Dr. Harrison's opinions themselves, the court notes that Dr. Harrison's opinions are challenged and contradicted by defendants' experts. They contest his opinions on both general causation and specific causation.

Defendant's principal expert is Dr. Hyman Zimmerman. He is a qualified expert in the relevant specialty, doing both research and writing in the field of hematology, with a particular focus on drug and chemical induced liver diseases. He has also studied and researched liver diseases involving halothane. In summary, Dr. Zimmerman's opinion is that there is no scientific evidence of general causation. That is, there has never been a reported case or an epidemiological study plausibly linking halothane to chronic active hepatitis. And on the issue of specific causation, he opines that even if halothane could cause such hepatitis, in plaintiff's case it did not. The disease progressed for over fourteen years after plaintiff's exposure to halothane had been ceased, and plaintiff was diagnosed with *advanced* stages of the disease only three months after his first exposure.

Plaintiff's treating physician, Dr. Stewart Danovitch, opines that plaintiff had an *autoimmune* hepatitis, because plaintiff's disease persisted so long after his exposure to halothane ceased, and because plaintiff responded well to steroid treatments.

### IV.

In its opinion on remand of *Daubert*, the Ninth Circuit addressed attention to a question of general applicability: whether the offered expert opinion grew out of research which the expert had conducted independent of the litigation, or whether the opinion was developed for the express purpose of testifying. 43 F.3d at 1317–18.

It is apparent from Dr. Harrison's declaration that his opinion is not based upon epidemiological research which he conducted. He

has not previously written on the subject. Nor is his opinion based upon any specific case studies in which he participated, although there is an inference that his own case work was consistent with the case studies of others. He did not formulate his opinion on whether halothane can cause plaintiff's disease before working on this litigation.

### V.

■ This court's basic inquiry is a search for scientific validity. *Daubert,* —— U.S. at ——, 113 S.Ct. at 2797.

■ Both the Supreme Court and Ninth Circuit decisions in *Daubert* require that this court satisfy itself that Dr. Harrison's opinion meets a standard of scientific reliability. The court must examine whether his opinion has objective, independent validation of his methodology which is scientifically reliable as a basis for such an opinion. *See generally, Daubert,* —— U.S. at —— – ——, 113 S.Ct. at 2795–98; 43 F.3d at 1315–17; *Manual,* at 69–112. Dr. Harrison did not do the studies upon which his opinion is based, but instead he is relying upon work reported by others.

### A.

One means of showing that his opinion is based upon scientifically valid principles and methodology is to show that the conclusions have been subjected to scientific scrutiny through publications and peer review. And indeed Dr. Harrison's declaration refers to one study.

■ It is a study entitled "Drug Induced Liver Disease in Denmark: An Analysis of 572 Cases of Hepatotoxicity Reported to The Danish Board of Adverse Reactions to Drugs," dated 1981. It should be noted that Dr. Harrison did not review this study before his deposition was taken. But he did have it before him at the time of making his declaration in opposition to this motion for summary judgment. Dr. Harrison's conclusion on general causation is to a large extent dependent upon his interpretation of that study. However, the study itself does not clearly support the conclusion that Dr. Harrison draws from it. He refers to Table II of the study (page 207). In that table, halothane is referred to,

with five reported cases linking halothane to chronic active hepatitis "and cirrhosis." However, the report then goes on to state (in text on page 208) that among the eleven cases of chronic active hepatitis all eleven were related to some exposure other than halothane. Therefore the five cases of halothane-related liver disease referred to in Table II are not in the category of chronic active hepatitis, but are instead in the category of "cirrhosis." Because the writers of the study combined chronic active hepatitis and cirrhosis on Table II rather than separating them, the study does not demonstrate sufficient scientific evidence of a relationship between halothane and chronic active hepatitis.

Further, the study itself is not an epidemiological study. It is instead a compilation of case reports. In *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 827 F.Supp. 1014, 1027 (S.D.N.Y.1993), the court described "epidemiology" and its application in determining causation between a drug and a disease:

> Epidemiology is a scientific discipline that by the very nature of its subject matter employs the concept of cause *qua* statistical probability. Useful hypotheses are framed, tested, refined, and used in identifying relations between one event, such as the exposure to carcinogenic substance *c*, and a subsequent event, such as the development of disease *d*.... [T]he epidemiologist focuses on a group of persons or a "cohort" and assesses the statistical probability that a percentage of individuals in a given cohort will develop *d* after being exposed to *c*.

In this case, the epidemiology study must show a statistically significant increase in chronic active hepatitis with exposure to halothane than without it. The study clearly does not described such an epidemiological analysis. Rather, as explained by the authors themselves, the article is simply a compilation of case reports:

> We report on 572 patients with drug-induced hepatotoxic reactions voluntarily re-. ported to The Danish Board of Adverse Reaction To Drugs during the decade 1968–1978.

Such case reports are not reliable scientific evidence of causation, because they simply described reported phenomena without comparison to the rate at which the phenomena occur in the general population or in a defined control group; do not isolate and exclude potentially alternative causes; and do not investigate or explain the mechanism of causation. Even if some credibility were given to the study, it does not have the degree of clarity required for a validation of its results or its methodology which is sufficient for objective and independent peer review.

Dr. Harrison does not cite to any other epidemiological or etiological study linking halothane to chronic active hepatitis. His declaration does state that it is "beyond dispute that halothane can cause hepatic injury, including hepatitis and there are numerous reports in the literature of 'halothane hepatitis'." However, his declaration does not cite to that literature. And Dr. Harrison has not treated chronic active hepatitis patients.

### B.

Dr. Harrison's opinion is also premised on four case reports cited in his declaration. However, each of those case reports involved patients who were exposed to halothane and subsequently contracted *some* liver disease, not necessarily chronic active hepatitis.

In his deposition, Dr. Harrison testified that none of the reports mentioned a specific pathological diagnosis of chronic active hepatitis. And in only one case was the patient actually diagnosed with chronic active hepatitis, rather than with symptoms of the disease which could also be symptoms of other conditions. And such a few anecdotal reports, which do not themselves assess cause and effect, are not sufficiently reliable to support a conclusion of causation. While these case histories may support plaintiff's position, they do not rise to the level of scientific reliability, methodology or validation required by *Daubert*.

### C.

The court therefore concludes that Dr. Harrison's opinion on general causation is not sufficiently based on scientific reliability and methodology to be admitted into evi-

dence under Federal Rules of Evidence 702 and 703.

## VI.

It may therefore be unnecessary for this court to comment on plaintiff's evidence of *specific* causation; that is, *did* halothane cause plaintiff's hepatitis. However, because specific causation is a vital step in the required chain of legal causation here, and because of the attention given to the subject by the Supreme Court and the Ninth Circuit, this court has also examined plaintiff's evidence of specific causation. This court's conclusions are that plaintiff's evidence does not meet the *Daubert* standard for admissibility; and even if it were admissible, the evidence is not sufficient to create a genuine issue of material fact.

In the Ninth Circuit's *Daubert* decision, the court analyzed specific causation under the Supreme Court's requirement of "fit." The Ninth Circuit said that the proposed expert testimony must be relevant to the case at hand; that is, it must logically advance a material aspect of plaintiff's case. The court defined this required showing as the need to demonstrate that, in this case halothane, "more likely than not" caused the injury. 43 F.3d at 1320–21. This requirement is defined by applicable state tort law.

■ Plaintiff again relies upon Dr. Harrison to establish specific causation. Dr. Harrison does so in paragraphs of his declaration in which he analyzes the information known about the progress of plaintiff's disease and plaintiff's possible pre-existing conditions. However, direct evidence is scant—not because of any lack of diligence on Dr. Harrison's part, but because of the limited information available about plaintiff's pathology and the lengthy fifteen year period of his decline. With scant direct evidence, Dr. Harrison's opinion about "did" must rely heavily upon this opinion about "can."

Dr. Zimmerman again disagrees. He bases his contrary conclusion on the fact that plaintiff showed *advanced* stages of the disease only three months after plaintiff's first exposure to halothane, and that plaintiff's disease progressed for fifteen years after his last exposure to halothane. Dr. Danovitch, plaintiff's treating physician, opines that plaintiff had *autoimmune* hepatitis, and that plaintiff responded well to steroid treatments. Dr. Zimmerman and Dr. Danovitch both conclude that halothane did not cause plaintiff's disease.

Whether viewed alone, or viewed in comparison with the opinions of Dr. Zimmerman and Dr. Danovitch, Dr. Harrison's opinion does not sustain plaintiff's burden. That is, Dr. Harrison's opinion does not demonstrate that halothane "more likely than not" caused plaintiff's disease.

## VII.

It is therefore the conclusion of the court that plaintiff's evidence of causation is not admissible under Federal Rules of Evidence 702 and 703. Further, even if that evidence were admitted, it would not be sufficient to create a genuine issue of material fact for presentation to the jury. Since this is plaintiff's only material evidence on the vital issue of causation in this case, summary judgment must be granted in favor of defendants.

IT IS SO ORDERED.