139 F.3d 905
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Anthony LOPEZ and Velma Lopez, Plaintiffs-Appellants,
v.
WYETH-AYERST LABORATORIES, INC., a Delaware corporation,
Defendant-Appellee.
 No. 97-15143.
D.C. No. CV-94-04054-CW.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 13, 1998.
Decided Feb. 25, 1998.
 
 Appeal from the United States District Court for the Northern District of California Claudia Wilken, District Judge, Presiding.
 Before SCHROEDER, FARRIS, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Anthony and Velma Lopez appeal the district court's grant of summary judgment in favor of Wyeth-Ayerst. Specifically, they challenge the district court's exclusion of expert scientific testimony under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (Daubert I ). We review the district court's exclusion of the Lopezes' scientific evidence for an abuse of discretion. General Electric Co. v. Joiner, --- U.S. ----, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). We affirm.
 
 
 3
 The Lopezes sued Wyeth-Ayerst, relying upon the expert scientific testimony of Dr. Peter Litchfield and Dr. William Patrick Joseph that Wyeth's 1993-94 flu vaccine had caused Mr. Lopez's Guillain-Barre Syndrome. The doctors based this conclusion primarily on: (1) the fact that flu shots are recognized antecedent events to GBS and Mr. Lopez's medical history indicated no other antecedent events; (2) anecdotal reports; (3) animal studies; (4) epidemiological tests; and (5) the fact that the FDA required Wyeth to include in its packaging a warning that its flu vaccine was associated with GBS. The district court concluded that the doctors' conclusions did not have an adequate foundation in science and were not sufficiently reliable to be admissible. Our review of the record satisfies us that the district court did not abuse its discretion in excluding the evidence.
 
 DISCUSSION
 
 4
 To be admissible, expert scientific testimony must have a sound scientific basis and must be helpful to the jury in understanding the offering party's case. Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1315 (9th Cir.1995). The district court is to admit only expert testimony that reflects "scientific knowledge," amounts to "good science," and is "derived from the scientific method." Id. (quoting Daubert I, 509 U.S. at 590). In conducting this inquiry, the district court must look at both the scientist's methodology and her conclusions in order to determine whether the science relied upon can reasonably support those conclusions. General Electric, --- U.S. at ---- - ----, 118 S.Ct. at 517-18.
 
 
 5
 Some of the grounds upon which Litchfield and Joseph base their conclusions can be readily discounted because they in no way speak to the central issue of causation. The fact that the administration of a flu vaccine is a recognized antecedent event to GBS in no way indicates that the 1993-94 Wyeth flu vaccine caused Mr. Lopez's GBS. Further, the absence of any other antecedent events in Mr. Lopez's medical history is not conclusive given that, according to plaintiff's own expert, 30-40% of GBS cases are idiopathic, meaning that they have no known cause. Likewise, anecdotal reports published in medical journals cannot support a finding of causation. See Casey v. Ohio Medical Products, 877 F.Supp. 1380, 1385 (N.D.Cal.1995). Such reports do not attempt to isolate causes and are not intended to reach conclusions as to causation. See id. The district court did not abuse its discretion in concluding that these sources could not support the experts' scientific conclusions.
 
 
 6
 Other sources relied upon by the doctors' are widely accepted scientific methodologies for proving causation but were not adequately linked to the circumstances of Mr. Lopez's case. Although animal studies can contribute to an expert's scientific conclusions as to causation, see Industrial Union v. American Petroleum, 448 U.S. 607, 100 S.Ct. 2844, 2871-72 fn. 64, 65 L.Ed.2d 1010 (1980), Mr. Lopez's doctors failed to establish a scientific link between the cited studies' findings that flu vaccines are "capable of contributing to a neurologic reaction" and their conclusions that Wyeth's 1993-94 vaccine caused Mr. Lopez's GBS. Such an analytical gap provides ample reason to exclude scientific testimony. General Electric, --- U.S. at ----, 118 S.Ct. at 519.
 
 
 7
 Likewise, Litchfield and Joseph failed to draw a sound scientific link between their conclusions and the two epidemiological studies they relied upon. The first study tracked the instances of GBS following administration of the 1976 swine-flu vaccine. Litchfield's made little effort to explain how this study was relevant to the potential effects of Wyeth's 1993-94 non-swine flu vaccine. He concluded that, "recognizing that no substantial changes have been made in the way that flu vaccines are made, there is no reason to think that [GBS] won't still occur with any flu vaccine."
 
 
 8
 The second epidemiological study at least focused on the flu vaccine in question: the 1993-94 Wyeth vaccine. That study, however, revealed no increased occurrence of GBS in vaccinees. Litchfield argued, without providing any scientific evidence, that this study could nonetheless support his conclusion because GBS is a severely underreported condition. The lack of any sound scientific link between the studies relied upon and the conclusions reached by the doctors supports the district court's exclusion of the their expert scientific testimony.
 
 
 9
 The final grounds upon which the doctors' based their conclusions was that the FDA required Wyeth to insert warnings in its packaging that the flu vaccine was associated with GBS. The Lopezes correctly point out that the FDA does not even permit such warnings, much less order them, unless there is general consensus in the medical community and there is "reasonable evidence of an association of a serious hazard with a drug." 21 C.F.R. § 201.57(e); Carlin v. Superior Court, 13 Cal.4th 1104, 1114, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (1996). However, the implementing regulations make clear that "a causal relationship need not have been proved" in order for the warnings to issue. 21 C .F.R. § 201.57(e). The FDA warning, therefore, cannot be relied upon as evidence of causation.
 
 
 10
 The district court appropriately weighed the grounds upon which Doctors Litchfield and Joseph based their conclusions. The analytical and scientific gaps between each of the grounds relied upon and the ultimate conclusions gave the district court adequate reason to exclude the testimony.
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3