Carol I. **WILLERT** and Robert **Willert**

v.

**ORTHO PHARMACEUTICAL CORP.**

No. 4–96–CV–233.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 25, 1998.

George Gregory Eck, James C Burroughs, II, Tammie M Gregg, Dorsey & Whitney, Minneapolis, MN, for Plaintiffs.

Bridget M Ahmann, Joseph Michael Price, Peter Goss, Faegre & Benson, Minneapolis, MN, for Defendant.

## ORDER

ROSENBAUM, District Judge.

Defendant seeks to exclude the testimony of plaintiffs' expert witness in this medical products liability case. Defendant's motion is premised on the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In the event the expert's opinion is excluded, defendant asks for an award of summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court heard oral argument on February 18, 1998. Defendant's motions are granted.

### I. *Background*

For the purposes of this opinion, the Court assumes the following facts: Plaintiff, Carol Willert, began treatment for an upper respiratory infection and chronic cough, diagnosed as acute bronchitis, in October, 1992. Her physician prescribed Bactrim, an antibacterial medication. In November, 1992, Ms. Willert's doctor switched her to Erythromycin after she suffered an adverse reaction to Bactrim. Despite this medication, her symptoms persisted.

Ms. Willert returned to her doctor in March of 1993, complaining of, among other things, a "loss of energy." Her bronchitis had apparently reappeared, and she was again given a prescription of Erythromycin. She returned to her doctor at the end of March, complaining of shortness of breath and a persistent cough. After this visit, her doctor prescribed Floxin, an antimicrobial medication manufactured by defendant, Ortho Pharmaceutical Corporation. Ms. Willert finished taking Floxin on May 10, 1993.

On May 31, 1993, Ms. Willert went to an emergency room complaining of weakness. She was diagnosed with autoimmune hemolytic anemia (AIHA), a condition marked by a decrease in, and destruction of, red blood cells. A week later she returned to the hospital and was diagnosed with Guillain–Barre Syndrome (GBS), a neurological disor-

der affecting the peripheral nerves of the body. Her condition has markedly improved, but she has not been restored to complete health.

## II. *Discussion*

### A. *The Expert Opinion*

Plaintiffs, Carol Willert and husband Robert Willert, claim Ms. Willert's Floxin prescription caused her AIHA and GBS. Their complaint alleges negligence, failure to warn, strict liability, implied warranty, and breach of express warranty, as well as loss of consortium. Each claim, at base, relies on the existence of a causal relationship between ingestion of Floxin and the development of AIHA and GBS.

Plaintiffs retained Dr. Harris Busch, a Professor and Chairman of the Department of Pharmacology at Baylor College of Medicine, as their expert witness. Dr. Busch's medical competence is not at issue. Dr. Busch, in his expert disclosure, opines that "It is probable to a reasonable degree of medical certainty that the hemolytic anemia and Guillain–Barre syndrome developed by Mrs. Willert are causally related to her treatment with Floxin for the period between March 31 and May 2, 1993."[1] The dispute turns on the foundation of his proffered opinion, and whether it is sufficiently grounded to be considered by the jury as finder of fact.

Defendant claims Dr. Busch's opinion fails to meet the Supreme Court standards for scientific reliability in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

■ Any analysis of a proffered expert opinion must begin with Rule 702 of the Federal Rules of Evidence, which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The holding in *Daubert* requires that, in order to be admissible under Rule 702, this Court "perform a gatekeeping function and insure that proffered expert testimony is both relevant and reliable." *Dancy v. Hyster Co.,* 127 F.3d 649, 652 (8th Cir.1997). "*Daubert* suggests that a trial court, when assessing the reliability of expert testimony, consider (1) whether the concept has been tested, (2) whether the concept has been subject to peer review, (3) what the known rate of error is, and (4) whether the concept is generally accepted by the community." *Pestel v. Vermeer Mfg. Co.,* 64 F.3d 382, 384 (8th Cir.1995).

■ Two bases undergird Dr. Busch's opinion: First, it is based on case reports and anecdotal evidence mentioned in the medical literature. Second, his opinion is based on the temporal proximity between the Floxin prescription and the onset of Ms. Willert's AIHA and GBS. For the reasons set forth below, the Court determines the proffered bases are insufficient to offer an opinion to a jury in this case.

A district court considered the nature of medical case reports and found:

Such case reports are not reliable scientific evidence of causation, because they simply describe reported phenomena without comparison to the rate at which the phenomena occur in the general population or in a defined control group .... [They] do not isolate and exclude potentially alternative causes ... and do not investigate or explain the mechanism of causation.

*Casey v. Ohio Medical Products,* 877 F.Supp. 1380, 1385 (N.D.Cal.1995). These observations hold here; the Court, as gatekeeper, considers it important that Dr. Busch is unable to point to any study linking Floxin to AIHA or GBS. He has not considered any other, or any entirely idiopathic, possible cause for Ms. Willert's ailments. This is particularly problematic here, because the Court takes judicial notice—and each side agrees—that both AIHA and GBS occur naturally in the population, entirely in the absence of Floxin.

■ A second major basis of Dr. Busch's opinion is the temporal proximity between

---

1. Ms. Willert's medical records show that her final prescription of Floxin expired on May 10, 1993. (Ahmann Aff.).

Ms. Willert's ingestion of Floxin and the onset of AIHA and GBS. Ultimately, the theory devolves into the thesis that because "B" came after "A," "A" caused "B." While this may be phenomenologically and temporally accurate, it does not prove causation, which is the issue at hand. The Eighth Circuit has focused on the problem inherent in a temporally based theory of causation. It recognized the error which occurs when, "Instead of reasoning from known facts to reach a conclusion, the expert[] ... reasoned from an end result in order to hypothesize what needed to be known but what was not." *Sorensen v. Shaklee Corp.*, 31 F.3d 638, 649 (8th Cir.1994). This is a situation where a prescription was taken and an illness developed, but the link between the two has never been tested.

◼ The Court finds the plaintiffs' expert opinion fails to provide meaningful answers to *Daubert*'s four basic questions. There is no showing that Dr. Busch's theory has been tested in any fashion. His theory has not been subject to peer review. Indeed, other than his observations, there is no peer literature. Finally, Dr. Busch has not shown that a theory positing that Floxin causes AIHA and GBS is generally accepted by the scientific community.[2]

Certainly, "[i]t is clear the [Supreme] Court did not intend for a trial judge to automatically exclude relevant evidence if one of ... [the *Daubert*] conditions was not fully satisfied." *Jenson v. Eveleth Taconite Company*, 130 F.3d 1287, 1298 (8th Cir.1997). And the Court further recognizes that *Daubert*'s suggested questions are not to be regarded as exhaustive. *See Daubert*, 509 U.S. at 591; *Sorensen*, 31 F.3d at 648–49. But plaintiffs have been unable to show any of its conditions are fully satisfied, or that there is an ultimate provable or disprovable scientific basis establishing the causal link.

The Court makes clear that it does not, and cannot, find that Floxin did not cause Ms. Willert's ailments. The Court does determine, however, within its role as gatekeeper, that applying the *Daubert* standards, the expert testimony offered by the plaintiffs does not meet the standards of scientific reliability which permit them to be considered by the jury. This possibility was clearly recognized by Justice Blackmun, when he wrote in *Daubert:*

> We recognize that, in practice, a gatekeeping role for the judge, no matter how flexible, inevitably on occasion will prevent the jury from learning of authentic insights and innovations. That, nevertheless, is the balance that is struck by Rules of Evidence designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes.

*Daubert*, 509 U.S. at 597. Justice Blackmun recognized that in the absence of replicable scientific proof, or of accepted scientific proof, the mere existence of a new theory which may yet be proven true, cannot meet the preponderance of the evidence test within the contemplation of the Federal Rules of Evidence. Therefore, defendant's motion to exclude the testimony of plaintiffs' expert witness is granted.

### B. *Summary Judgment*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. *See Anderson*, at 248–49; *see also Hartnagel v. Norman*, 953 F.2d 394, 395–96 (8th Cir.1992). If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case, on which that party will bear the burden of proof at trial, summary judgment should be granted. *See Celotex*, 477 U.S. at 322; *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.*, 838 F.2d 268 (8th Cir.1988).

---

**2.** The third *Daubert* question, whether there is a known rate of error, does not apply here because the proffered theory does not involve a particular scientific technique. *See Sorensen,* 31 F.3d at 649.

■ An essential element to all of plaintiffs' theories is admissible proof that Floxin caused Ms. Willert's AIHA and GBS. Under Minnesota law, "Where the question involves obscure and abstruse medical factors such that the ordinary layman cannot reasonably possess well-founded knowledge of the matter ... there must be expert testimony that the thing alleged to have caused the result not only might have done so, but in fact did cause it." *Stahlberg v. Moe,* 283 Minn. 78, 166 N.W.2d 340, 345 (1969). The Court finds the present case involves such obscure and abstruse medical questions requiring competent expert testimony. By this decision, the Court has excluded the testimony of Dr. Harris Busch, plaintiffs' expert witness. Absent this testimony, plaintiffs are unable to establish the existence of causation, an essential element of its case. Therefore, summary judgment for the defendant is granted.

III. *Conclusion*

For the reasons set forth above, IT IS ORDERED that:

1. Defendant's motion to exclude the testimony of plaintiff's expert witness, Dr. Harris Busch, is granted.

2. Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.