NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0477n.06

Nos. 22-1886/1941

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 14, 2023
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JAKE FINLEY, | ) | |
|     Plaintiff-Appellant/Cross-Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| MANUEL MORA; NINA TRANSPORT, INC., | ) | |
|     Defendants-Appellees/Cross-Appellants. | ) | OPINION |

Before: SUTTON, Chief Judge; CLAY and LARSEN, Circuit Judges.

LARSEN, J., delivered the opinion of the court in which SUTTON, C.J., joined. CLAY, J. (pp. 12–22), delivered a separate dissenting opinion.

LARSEN, Circuit Judge. While attempting to park his tractor-trailer at a rest stop, Manuel Mora collided with Jake Finley's already-parked tractor-trailer. Finley sued Mora and Nina Transport, Inc.,[1] Mora's trucking company, to recover damages purportedly arising out of the incident. The district court granted summary judgment in Mora's favor after concluding that Finley could not show that Mora caused his injuries. Finley appeals. For the reasons below, we AFFIRM the judgment of the district court and DISMISS Mora's cross-appeal as moot.

I.

On January 7, 2020, Jake Finley parked his tractor-trailer at a BP truck stop; he remained in the cab, awaiting his third pickup of the day. Manuel Mora pulled his tractor-trailer into the

---

[1] For simplicity, we refer to the defendants as "Mora" throughout.

same truck stop and, when attempting to park, collided with Finley's vehicle. Finley testified that, upon impact, he bounced around the cabin and flew into the steering wheel and that absent the steering wheel he would have flown through the windshield. Finley did not tell the police that he was injured, though he says he was feeling pain when the officer arrived at the scene. The police report recorded no damage to Finley's truck and only minor damage to Mora's.

After the accident, Finley drove three or four miles to the next stop on his route. There, he decided he could proceed no further and needed to see a doctor. So he returned his truck to the yard and then drove his personal vehicle to a Concentra Urgent Care Center, where, after taking x-rays, doctors prescribed him ibuprofen and physical therapy. Over the next several months, Finley—complaining of continued neck, back, and shoulder pain—underwent many additional consultations and tests, as well as two surgeries.

Dr. Timothy Doig, a board-certified orthopedic surgeon, participated extensively in Finley's treatment. He first examined Finley two months after the accident. Dr. Doig performed surgery on Finley's right shoulder about two months later. During postoperative monitoring, Finley still complained of pain. Dr. Doig continued to treat Finley and eventually operated on his left shoulder. After a subsequent MRI, Dr. Doig reported that Finley's shoulders required no further surgery but noted that Finley continued to complain of spine and hip pain, for which Dr. Doig was not treating him.

Finley has been on leave from work since the accident and maintains that he is in constant pain. He is receiving workers' compensation benefits for his injuries.

Finley sued Mora in Michigan state court for negligence. Invoking diversity jurisdiction, Mora removed the case to federal court. Mora later moved for summary judgment, arguing that Finley had not suffered a "serious impairment of body function" that would permit recovery of

noneconomic damages under Michigan law and that Finley could not demonstrate that the collision caused his injuries. R. 19, PageID 121–22, 125–26. Regarding causation, Mora submitted a report from an accident reconstruction expert, with a Ph.D. in biomedical engineering, who concluded that the collision impact could not possibly have caused Finley to contact any part of the interior of the cab other than the seat on which he sat. Finley's conditions were pre-existing and degenerative, the report continued. They were neither caused nor exacerbated by the collision with Mora. Finley responded with an affidavit from Dr. Doig, opining "within a reasonable degree of medical certainty" that the collision caused Finley's medical conditions. Mora argued that Dr. Doig's opinion was inadmissible and later moved to exclude any opinion from Finley's treating physicians on the issue of proximate cause.

With the methodology for Dr. Doig's causation opinion now at issue, the parties deposed him. Dr. Doig explained that he based his causation opinion on a detailed history from Finley, a physical examination and testing, and his review of Finley's medical records. On cross-examination, Dr. Doig admitted that he thought Finley had been in a car when struck by Mora's tractor-trailer. Dr. Doig was unaware that Finley had been in an accident in 2016, after which he complained of neck and back pain, sought urgent-care treatment, and missed work for thirty days. He explained that he had no idea of the forces involved in the collision, was unaware of the lack of damage to the tractor-trailers, and did not know whether the impact was significant enough to produce Finley's injuries. Finally, Dr. Doig agreed that he generally is more concerned about identifying and treating his patients' injuries moving forward than he is about what caused their injuries.

The district court granted summary judgment to Mora. The court found that Finley had suffered a threshold "serious impairment of body function" under Michigan law. *Finley v. Mora*,

No. 20-11739, 2022 WL 3970829, at *8 (E.D. Mich. Aug. 31, 2022). But the court agreed with Mora that Dr. Doig's causation opinion was inadmissible because it was not the result of reliable principles and methods. Without the Doig affidavit, the court concluded, Finley had offered no evidence sufficient to create a fact issue on causation. Having concluded that Dr. Doig's opinion was inadmissible in evaluating Mora's motion for summary judgment, the district court denied Mora's separate motion to exclude as moot.

Finley now appeals. Mora cross-appeals from the denial of the motion to exclude as moot.

## II.

## A.

Finley challenges the district court's summary-judgment decision. The district court granted summary judgment after concluding that Dr. Doig's causation opinion was inadmissible and that, without that testimony, Finley had offered no other evidence of causation sufficient to create a triable issue.

We review the summary-judgment decision de novo. *El-Khalil v. Oakwood Healthcare, Inc.*, 23 F.4th 633, 634 (6th Cir. 2022). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact," *id.* at 634–35 (quoting Fed. R. Civ. P. 56(a)), including by demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). We review the exclusion of expert testimony, by contrast, only for an abuse of discretion—"even when that decision results in the entry of summary judgment." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 248 (6th Cir. 2001) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142–43 (1997)). "Deference" is "the hallmark of abuse-of-discretion review." *Joiner*, 522 U.S. at 143. We will find an abuse of discretion only when

convinced that the district court committed a "clear error of judgment." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008) (quotation omitted).

The substantive law governing this dispute is relatively straightforward. Michigan embraces the ordinary elements of negligence—duty, breach, causation and damages. *See Haliw v. Sterling Heights*, 627 N.W.2d 581, 588 (Mich. 2001). A statute is also relevant. Michigan's No-Fault Act provides that a person is liable for noneconomic damages "caused by" his or her use of a motor vehicle only if the plaintiff suffered "death, serious impairment of body function, or permanent serious disfigurement." Mich. Comp. Laws § 500.3135(1). A "serious impairment of body function," in turn, must be an "objectively manifested" "impairment of an important body function" that "affects the injured person's general ability to lead his or her normal life." *Id.* § 500.3135(5)(a)–(c).

While state law controls the substance of Finley's claim, federal rules govern the procedure, "including evidentiary rulings made pursuant to the Federal Rules of Evidence." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). A district court plays a "gatekeeping role" in screening expert testimony under Federal Rule of Evidence 702. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). The district court must evaluate, among other things, whether the opinion is "the product of reliable principles and methods," Fed. R. Evid. 702(c), or, by contrast, is impermissible "subjective belief or unsupported speculation," *Daubert*, 509 U.S. at 590. As its proponent, Finley bore the burden of demonstrating that Dr. Doig's causation opinion was the product of reliable principles and methods. *See Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008).

As the district court recognized, there are important differences between expert opinions regarding diagnosis—"what disorder caused the set of symptoms observed?"—and those concerning etiology—"what caused the disorder diagnosed?" *Tamraz*, 620 F.3d at 669. Of course, a treating physician's causation opinion may be admitted if it otherwise meets the requirements set forth in the federal rules and *Daubert*. *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009). But we evaluate such opinions mindful that "most treating physicians have more training in and experience with diagnosis than etiology." *Tamraz*, 620 F.3d at 673.

B.

With this background in mind, we turn to Dr. Doig's opinion. Dr. Doig testified that the basis for his causation opinion included the history Finley provided, a review of his MRI records, and Dr. Doig's experience examining and performing surgery on Finley. On appeal, Finley largely makes the same offering, though he also asserts that Dr. Doig's opinion was the result of a "differential diagnosis." Appellant Br. at 28–29.

Regardless of Finley's characterization, we cannot say that the district court abused its discretion in concluding that Dr. Doig's methodology did not measure up. To start, Finley's self-reporting of the chronology of the accident and his symptoms is insufficient to support an etiological conclusion. "*Post hoc, ergo propter hoc*" is neither a "rule of legal causation," *Abbott v. Fed. Forge, Inc.*, 912 F.2d 867, 875 (6th Cir. 1990), nor typically a sufficient methodological basis for an expert opinion on causation, *see Rolen v. Hansen Beverage Co.*, 193 F. App'x 468, 473 (6th Cir. 2006). And Dr. Doig's review of Finley's medical records and experience performing surgery on him are likewise insufficient bases from which to draw etiological conclusions. *See Tamraz*, 620 F.3d at 673 ("The ability to diagnose medical conditions is not remotely the same . . . as the ability to deduce . . . in a scientifically reliable manner, the causes of those medical

conditions." (alterations in original) (quotation omitted)). Finley argues that Dr. Doig "arrived at treatment plans by considering customary medical information" and that his opinion was not "arrived at in any fashion different than how doctors typically *treat* patients." Appellant Br. at 13, 25 (emphasis added). But that argument "conflates a doctor's expertise in diagnosis with a doctor's expertise in etiology." *Tamraz*, 620 F.3d at 673. As our caselaw makes clear, the latter does not follow from the former.[2]

This case illustrates why. During his deposition, Dr. Doig revealed faulty assumptions and methodological gaps in his causation opinion. He testified that he understood that Finley had received the brunt of a tractor-trailer collision while in a parked car, rather than in his own tractor-trailer. Dr. Doig explained that Finley had not disclosed his prior accident in 2016, after which Finley complained of back and neck pain and did not work for thirty days. Dr. Doig was unaware of whether the tractor-trailers involved had incurred any damage in the collision or even whether the forces of the impact were significant enough to possibly cause an injury. And he acknowledged why he never grappled with these considerations: As a treating physician, he understandably is more concerned with identifying and prospectively treating his patient's condition than isolating the incident that may have caused it. This is a textbook explanation for why courts mind carefully the difference between diagnosis in the clinical setting and etiological conclusions for the courtroom. *See Tamraz*, 620 F.3d at 673.

---

[2] To be clear—the parties do not dispute, and we do not question, Dr. Doig's qualification to testify, for example, regarding Finley's treatment or the scope and extent of his alleged injuries. *See* Appellee Br. at 8 ("Defendants did not seek . . . to exclude all testimony and opinions [of Dr. Doig.] Defendants only sought exclusion of opinions and testimony addressing proximate [causation.]" (emphasis omitted)). The issue here is only whether the district court abused its discretion in determining that Dr. Doig's opinion regarding causation was methodologically unsound. It did not.

It makes no difference that Finley, for the first time on appeal, characterizes Dr. Doig's causation opinion as the product of "differential diagnosis." Appellant Br. at 29. We have at times endorsed the reliability of "differential diagnosis" or "differential etiology." *Tamraz*, 620 F.3d at 674; *see also Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001). That methodology involves considering "all relevant potential causes of the [patient's] symptoms and then eliminat[ing] alternative causes based on a physical examination, clinical tests, and a thorough case history." *Hardyman*, 243 F.3d at 260 (quoting Federal Judicial Center, *Reference Manual on Scientific Evidence* 214 (1994)). Critical to the methodology is consideration of alternative possible causes of the patient's condition. *See id.* at 261; *Tamraz*, 620 F.3d at 674. Indeed, "the court must exclude the ultimate conclusion reached" if an expert has not "reliably rule[d] out . . . rejected causes." *Tamraz*, 620 F.3d at 674. Here, there is no indication that Dr. Doig considered any possible alternative causes of Finley's condition, let alone reliably ruled them out. So Dr. Doig's causation opinion cannot be defended as a proper "differential diagnosis." *Id.*; *see also In re Aredia & Zometa Prod. Liab. Litig.*, 483 F. App'x 182, 188–90 (6th Cir. 2012) (affirming exclusion of expert testimony for improper foundation and failure to reliably rule out alternative causes).

Finley faults the district court for deciding to exclude Dr. Doig's causation opinion in the context of a summary-judgment motion rather than after a *Daubert* hearing. But we have long recognized that a "district court is not required to hold an actual hearing to comply with *Daubert*." *Nelson*, 243 F.3d at 249. Whether to hold a hearing, much like the ultimate decision to exclude expert testimony, falls squarely within the district court's discretion. *Id.*; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). And the same rule applies even when the "decision to exclude the testimony of plaintiff['s] expert . . . results in the entry of summary judgment."

*Nelson*, 243 F.3d at 248. There was no abuse of that discretion here. The district court had the benefit of both parties' briefing and exhibits on Mora's motion to exclude, including Dr. Doig's affidavit and deposition transcript. The court, thus, had an "adequate basis" for assessing the reliability of Dr. Doig's causation opinion when it evaluated Mora's summary-judgment motion. *Nelson*, 243 F.3d at 249; *see also U.S. ex rel. Am. Sys. Consulting, Inc. v. ManTech Advanced Sys. Int'l*, 600 F. App'x 969, 979 (6th Cir. 2015) ("[T]he district court did not abuse its discretion in excluding Plaintiff's proposed expert testimony or in making that determination at the summary judgment stage.").

Finley argues that this case "mirrors" *Padillas v. Stork-Gamco, Inc.*, in which the Third Circuit found error in the district court's decision to exclude expert testimony and grant summary judgment without a *Daubert* hearing. 186 F.3d 412, 417–18 (3d Cir. 1999). *Padillas*, of course, is not binding in this circuit. It also created no categorical rule requiring a hearing before a district court decides a *Daubert* challenge, including when that challenge results in summary judgment. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 151–54 (3d Cir. 2000). And *Padillas* offers nothing to persuade us that the district court abused its discretion here. In *Padillas*, "the expert's opinion was so conclusory and the record so scant that the district court could not have evaluated how the expert arrived at his conclusions"—a far cry from the situation the district court here confronted when evaluating Dr. Doig's methodology. *Nelson*, 243 F.3d at 249 n.3 (citing *Oddi*, 234 F.3d at 151–54 (distinguishing *Padillas*)). Thus, *Padillas* is neither binding nor persuasive and, on these facts, wouldn't require a *Daubert* hearing even in the Third Circuit.

The district court did not abuse its discretion when it excluded Dr. Doig's causation opinion.

C.

The district court concluded that, without Dr. Doig's opinion, Finley had offered no evidence to create a fact issue on causation, so summary judgment was appropriate. Finley protests that the district court's summary-judgment findings were internally inconsistent. According to Finley, "[i]n finding that [he] presented sufficient evidence for recovery under MCL 500.3135(1), the court would have to necessarily find that the evidence establishing this was admissible, and that the evidence allowed reasonable jurors to find that [he] sustained serious impairment of body function caused by the collision." Appellant Br. at 23–24; *see* Appellant Reply Br. at 9–10.

Finley misreads the district court's opinion. The district court began its analysis by explaining that Mora's motion presented two global issues: "(1) the existence of a 'serious impairment of body function'"—a prerequisite to recover noneconomic damages under Michigan's No-Fault Act, *see* Mich. Comp. Laws § 500.3135(1)—and "(2) the causal connection between [Finley's] injuries and the accident," *Finley*, 2022 WL 3970829, at *6. The district court explained that it would "address[] these issues in turn." *Id.* True to its word, the district court then evaluated whether Finley had created a fact issue regarding the existence of a "serious impairment of body function." *Id.* at *6–8. As explained, that inquiry has three elements—none of which requires a finding of causation. Mich. Comp. Laws § 500.3135(5)(a)–(c). And, contrary to Finley's protestations, at no point did the district court "find[] that Plaintiff presented sufficient evidence for *recovery* under MCL 500.3135(1)." Appellant Br. at 23 (emphasis added). Only after concluding that Finley had offered enough evidence to survive summary judgment on this statutory prerequisite did the district court turn to causation. Thus, there is no inconsistency in the district court's opinion; Finley's argument to the contrary provides no basis for reversal.

D.

Finley does not meaningfully argue in this court that he has created a jury-submissible fact issue on causation without Dr. Doig's affidavit, though he alludes briefly to a few other facts. These include a medical record reflecting a history Finley provided to Concentra that indicates "[t]his is the result of a motor vehicle accident"; that Finley's workers' compensation insurance carrier paid benefits, "manifesting its recognition that [his] disability was caused by the on-work crash"; and that Finley testified that he had no shoulder problems before the collision. Appellant Br. at 27; Appellant Reply Br. at 10. Finley, however, fails to explain why any is sufficient to establish causation or send the issue to a jury. And Finley relied only on the Doig affidavit to establish causation when opposing summary judgment before the district court. His cursory treatment of any alternative causation evidence here, and his failure to invoke any below, means that any potential argument is forfeited. *See Kovacic v. Cuyahoga Cnty. Dep't of Child & Fam. Servs.*, 606 F.3d 301, 307 (6th Cir. 2010); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (noting that it is not the district court's "duty to search the entire record to establish that it is bereft of a genuine issue of material fact").

In sum, we agree with the district court that without Dr. Doig's causation opinion, Finley has not created a triable issue on causation. So the district court properly granted summary judgment to Mora. *Celotex*, 477 U.S. at 323,

\* \* \*

We AFFIRM the judgment of the district court. Because we affirm the district court's judgment in Mora's favor, we DISMISS his cross-appeal as moot. *See A. K. ex rel. Kocher v. Durham Sch. Servs., L.P.*, 969 F.3d 625, 628 n.1 (6th Cir. 2020).

**CLAY, Circuit Judge, dissenting.** After an automobile accident involving Defendant Manuel Mora and his trucking company, Nina Transport, Plaintiff Jake Finley sought to introduce expert testimony from his treating physician averring that an injury to his right shoulder was caused by the accident. The district court, relying on an overly broad reading of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), improperly exercised its gatekeeping function and ruled the testimony inadmissible. Finding no genuine dispute of material fact as to causation, the district court then granted summary judgment for Defendants. Because *Daubert* is meant to screen testimony that depends on an unreliable basis rather than testimony that purportedly yields a questionable conclusion, and because disputed evidence should ultimately be for the factfinder to weigh rather than the district court to eliminate, the district court abused its discretion. Therefore, I respectfully dissent.

Defendant Manuel Mora accidentally drove his tractor-trailer into Plaintiff Jake Finley's already parked tractor-trailer on January 7, 2020. Finley, claiming a personal injury as a result of the collision, brought suit against Mora and his trucking company, Nina Transport. After the conclusion of discovery, Finley offered, in addition to his own testimony, the testimony of his treating physician, Dr. Timothy Doig, in support of his argument that the accident caused his injury. Dr. Doig relied on the patient history of Finley taken two months after the accident, an MRI taken about five weeks after the accident, and his extensive experience as a board-certified orthopedic surgeon in concluding that the accident caused the injury to Finley's right shoulder. Defendants argued that Dr. Doig's testimony was inadmissible under *Daubert* because Dr. Doig relied exclusively on the chronology of events and Finley's own summary of his medical history to reach the conclusion that the accident caused Finley's injury. The district court agreed with Defendants and excluded Dr. Doig's testimony. Because Finley pointed to no other evidence

sufficient to create a fact issue as to causation, the district court granted summary judgment to Defendants. The district court also denied Mora's separate motion to exclude the testimony as moot. Finley timely appealed, challenging the exclusion of Dr. Doig's testimony, the denial of a *Daubert* hearing, and the grant of summary judgment. Mora cross-appealed from the denial of the motion to exclude as moot.

First, we should consider *Daubert*'s background, requirements, and goals. *Daubert* outlines factors that the trial court should consider when acting as a gatekeeper for admission of expert testimony: "the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S at 592. In doing so, the Supreme Court interpreted Federal Rule of Evidence 702[1] as having superseded the *Frye* test, which federal courts had applied for decades before *Daubert*. The *Frye* test, adopted from an opinion of the D.C. Circuit, established that "while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it

---

[1] Rule 702 reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

belongs." *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923). But the *Daubert* Court found that *Frye* was too "rigid" and "austere" and "at odds with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *Daubert*, 509 U.S. at 588–89 (citation omitted). While *Frye* is no longer good law, we should recognize that *Daubert* interpreted Rule 702 to ask less of expert witnesses than did *Frye*. A *Frye* inquiry would ask whether the basis for the expert testimony is generally accepted as reliable among the scientific community. *Frye*, 293 F. at 1014. In this case, because the basis for Dr. Doig's opinion is a physical examination, an MRI, patient history, and a diagnosis, the answer is surely yes. And because the *Daubert* Court, by its own admission, relaxed the stricter demands of *Frye*, testimony that would be admissible under *Frye* should be admissible under *Daubert*.

But it is *Daubert* that applies to this case. The Court in *Kumho Tire* expanded *Daubert*'s holding to apply not only to testimony based on scientific knowledge, but to any expert witness testifying to specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). And this Court has applied *Daubert* to the testimony of treating physicians on causation many times. *See, e.g.*, *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009) (holding that "a treating physician may provide expert testimony regarding a patient's illness, the appropriate diagnosis for that illness, and the cause of the illness," but that such opinions are still subject to *Daubert*).

Just because the district court was required to apply *Daubert*, however, does not mean that it did so correctly. The *Daubert* inquiry requires "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. Importantly, the district court should evaluate only the basis of the opinion rather than

the opinion itself: "[t]he inquiry envisioned by Rule 702 is, we emphasize, a flexible one . . . [t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594–95.

The district court found that Finley failed to discharge his burden to show that Dr. Doig's testimony was reliable under *Daubert*. In particular, the district court held that Finley did not sufficiently show that Dr. Doig's conclusion that the car accident caused Finley's injury was "the product of reliable principles and methods." Op. and Order, R. 29, Page ID #626 (citing Fed. R. Evid. 702). The district court lamented that Dr. Doig based his opinion "solely on Plaintiff's description of his medical history and Plaintiff's telling him that his injury started after the car accident." *Id.* And the district court was "cognizant of the difference between 'diagnosis (what disorder caused the set of symptoms observed?)' and 'etiology (what caused the disorder diagnosed?)'" *Id.* (quoting *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 669 (6th Cir. 2010)). The district court held that, because Dr. Doig failed to consider alternative causes for Finley's injury, his etiological conclusion was inadmissible.

The district court also found harmful to the Plaintiff's case what it considered to be the lack of differential diagnosis, which involves ruling in and out potential causes of the condition. The district court cited *Tamraz* for the proposition that an expert's etiological conclusion is often inadmissible unless the court answers affirmatively to the following questions: "'(1) Did the expert make an accurate diagnosis of the nature of the disease? (2) Did the expert reliably rule in the possible causes of it? (3) Did the expert reliably rule out the rejected causes?'" Op. and Order, R. 29, Page ID #627. (citing *Tamraz*, 620 F.3d at 674). But *Tamraz* noted that these were requirements of opinions that relied on differential diagnosis as a methodology, not any causation opinion offered by a treating physician. The record is unclear as to whether Dr. Doig relied on

differential diagnosis in rendering his causation opinion, so the court need not ask or answer all the *Tamraz* questions. In any case, this Court has never held that differential diagnosis is required for a treating physician's opinion to pass the *Daubert* test. *See, e.g.*, *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 390 (6th Cir. 2000) ("In order to be admissible on the issue of causation, an expert's testimony need not eliminate all other possible causes of the injury.").

The district court's evidentiary determinations at issue in this case ultimately boil down to issues of weight, not admissibility. The *Daubert* Court itself emphasized the value of reserving key disputes for the finder of fact, not for the district court in its gatekeeping role: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. And this Court's case law underscores that where testimony is questionable, it should be for the factfinder to weigh rather than for the district court to exclude. *See, e.g.*, *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 182 (6th Cir. 2009) ("Any weaknesses in his methodology will affect the weight that [the expert's] opinion is given at trial, but not its threshold admissibility."); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (citation omitted) ("[M]ere weaknesses in the factual basis of an expert witness opinion . . . bear on the weight of the evidence rather than on its admissibility."); *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993) (citation omitted) ("[W]here the opinion has a reasonable factual basis, it should not be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis."). Therefore, the question is not whether the expert rendered an unquestionable opinion, but whether he relied on sufficient bases in rendering the opinion, which may be questioned at trial.

In this case, the district court found the basis of Dr. Doig's opinion wanting, holding that Dr. Doig relied exclusively on the concept of *post hoc ergo propter hoc* (Latin for "after it therefore because of it") and Plaintiff's word. But, contrary to the district court's decision, Dr. Doig relied on methodology other than temporal proximity. He took Plaintiff's history, reviewed reliable medical imaging, conducted a physical examination, and rendered a diagnosis—widely used techniques that satisfy *Daubert*. As this Court held in *Jahn*, "[l]ooking at the records of test results and physical symptoms to infer the presence of [a condition] is not a methodologically unsound assumption or guess—it is a diagnosis." *Jahn*, 233 F.3d at 391 (internal quotation marks omitted). Further, while there is a distinction between diagnosis and etiology, that distinction does not render diagnoses automatically inadmissible. Where, as here, a diagnosis is arrived at via reliable techniques, *Daubert* is satisfied.

Our case law reflects as much. For instance, take this Court's decision in *Best*, 563 F.3d 171 (6th Cir. 2009). In that case, a treating physician relied on a physical examination, patient history, differential diagnosis, and a medical test in rendering his opinion that plaintiff lost his sense of smell as a result of chemical exposure. Apart from differential diagnosis, Dr. Doig relied on similar bases for his opinion. And the doctor in *Best* relied on a more niche medical test than the widely used MRI on which Dr. Doig relied. *Id.* at 180. Still, *Best* held that the expert "performed as a competent, intellectually rigorous treating physician in identifying the most likely cause of [plaintiff's] injury." *Id.* at 182. As a result, "any weaknesses in his methodology will affect the weight that his opinion is given at trial, but not its threshold admissibility." *Id.* The *Best* Court made no distinction between causation and etiology for purposes of an admissible opinion.

Not so in *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665 (6th Cir. 2010), upon which the majority opinion relies, Maj. Op. at 6–8, but from which this case materially differs. The causation

opinion in *Tamraz* relied on several speculative, inferential steps. The plaintiffs sought to introduce testimony from a neurologist averring that manganese exposure caused the plaintiff's Parkinson's disease. The Court held that the neurologist's opinion was mere hypothesis and was not the product of reliable principles and methods as required by Rule 702. *Id.* at 670 (noting the seven steps to the neurologist's line of reasoning, all of which were inconclusive and several of which required "speculative jumps" between them). The same cannot be said for Dr. Doig, who was confronted with a straightforward injury and a straightforward potential cause. Further, the neurologist in *Tamraz* "conceded he knew of no studies finding a link between manganese and Parkinson's Disease." *Id.* But this case does not turn on the existence of medical literature establishing a link between a condition and its cause; rather, a qualified physician, basing an opinion on reliable methods like patient history and medical records, could conclude that an automobile accident caused the injury without any literature support. Dr. Doig's testimony, unlike the neurologist in *Tamraz*, meets the threshold for reliability set forth in *Daubert*.

This case also differs from *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419 (6th Cir. 2009). At issue in *Gass* was whether a specific pesticide caused the plaintiff's symptoms. While the treating physicians in *Gass* had a reliable basis to conclude that plaintiff's symptoms were the result of some kind of chemical exposure, "nothing in [the treating physicians'] medical expertise would provide a basis to determine the exact chemical Plaintiffs were exposed to" and the treating physicians could not "rely on their general knowledge of pesticides to testify regarding the specific pesticide that caused Plaintiffs' symptoms, or when Plaintiffs' exposure to that pesticide occurred." *Id.* at 428. Such reasoning could apply to this case if Dr. Doig was relying solely on his general knowledge of shoulder injuries rather than direct examination of the patient and his medical records. As the *Daubert* Court held, "[t]he focus, of course, must be solely on principles

and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Because Dr. Doig relied on the sound basis of an MRI, patient history, and physical examination, his testimony need not meet the same fate as that in *Gass.*

Further, because both *Tamraz* and *Gass* dealt with complicated toxic tort actions, the causation testimony in each case required heightened scrutiny to ensure it was reliable under *Daubert*. Such concerns are inapplicable to Finley's relatively straightforward personal injury action. As this Court held in *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976 (6th Cir. 2004), "Daubert's role of ensur[ing] that the courtroom door remains closed to junk science is not served by excluding testimony such as [testifying physician's] that is supported by extensive relevant experience. Such exclusion is rarely justified in cases involving medical experts as opposed to supposed experts in the area of product liability." *Id.* at 982 (citation omitted). This Court need only determine whether the basis of the opinion was sound, and Plaintiff has met that bar here.

Defendants further claim that Dr. Doig could not have rendered a reliable opinion on causation without knowing about Finley's potentially pre-existing health conditions and prior automobile accidents, considering medical records to which Dr. Doig did not have access, or engaging in a more rigorous form of differential diagnosis. But Defendants' arguments about alternative causes defeat neither the reliability of Dr. Doig's methodology nor the plausibility of his opinion. And the majority's contention that Dr. Doig was missing key information is not enough to render it inadmissible. Maj. Op. at 7–8. "Admissibility under Rule 702 does not require perfect methodology." *Best*, 563 F.3d at 181; *see also In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 744 (3d Cir. 1994) ("The grounds for the expert's opinion merely have to be good, they do not have to be perfect."). Testimony is not unreliable just because a testifying physician did not

conduct his examination and treatment in the manner the defendant preferred. *Kudabeck v. Kroger Co.*, 338 F.3d 856, 861 (8th Cir. 2003). We require not the defendant's preferred methodology, but a reliable one. And, contrary to the majority's claim that the consideration of alternative possible causes is "critical" to the methodology, Maj. Op. at 8, the fact that Dr. Doig did not eliminate all potential alternate causes also does not render his opinion inadmissible. As this Court held in *Jahn*, "[t]he fact that several possible causes might remain 'uneliminated' … only goes to the accuracy of the conclusion, not to the soundness of the methodology." *Jahn,* 233 F.3d at 390 (quoting *Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C. Cir. 1996)). Further, *Daubert* is not concerned with the persuasiveness of the conclusion: "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Defendants may have a meritorious argument that the accident in question may not have been the primary cause of Finley's injury, due to his potential degenerative issues and prior automobile incidents. But that is for Defendants' counsel to explore when cross-examining Dr. Doig at trial.

Lastly, Defendants allege that if this Court rules for Finley and allows this case to go to a jury, it "would establish a dangerous precedent where experts will become mere hired guns." Appellee Br., ECF No. 39, 37. Histrionics aside, Defendants' quarrel is not with this Court but with the Federal Rules of Evidence, which have a bias towards admissibility and only bar expert testimony where, per Rule 702, the testimony is not based on reliable principles or methods. Where a treating physician has relied on such principles or methods, as has occurred here, the rightful place to combat that opinion is at trial.

Holding for Defendants requires this Court to find that medical imaging and patient history—both relied on by millions of physicians around the world for the dual tasks of diagnosis and etiology—are somehow unreliable. This, the Court cannot and should not do. Rather than

acknowledge the implications of such a holding, the majority ignores both the reasoning from *Daubert* and this Court's precedent in order to excuse the exclusion of admissible evidence. Defendants are entitled to poke holes in Dr. Doig's testimony at trial; they are not permitted to manipulate Supreme Court precedent to foreclose Dr. Doig from testifying at all.

We review the district court's evidentiary rulings for an abuse of discretion, *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 248 (6th Cir. 2001), and "deference" is "the hallmark of abuse-of-discretion review." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997). To reverse under this standard, we must find that the district court "committed a clear error of judgment," *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 781 (6th Cir. 2002), or "relie[d] on clearly erroneous findings of fact, … improperly applie[d] the law or use[d] an erroneous legal standard." *Phelan v. Bell*, 8 F.3d 369, 373 (6th Cir. 1993) (citation omitted).

This case meets that bar. The district court committed a clear error of judgment in construing the basis for Dr. Doig's testimony as only Plaintiff's word, rather than the universally relied-upon MRI test, patient history, physical examination, and diagnosis. Further, the district court used an erroneous legal standard in focusing on the accuracy of the opinion, which the district court doubted, rather than the reliability of the basis of that opinion. Lastly, the district court improperly applied the law when deciding to dispose of the potential flaws in Dr. Doig's testimony at the summary judgment stage, rather than allow Defendants' counsel to cross-examine Dr. Doig at trial. *See, e.g.*, *In re Paoli*, 35 F.3d at 744 (holding that "even if the judge thinks that there are better grounds for some alternative conclusion, and even if the judge thinks that a scientist's methodology has some flaws" that would change the result, the testimony is admissible if it relies on good grounds).

It was a clear error of judgment for the district court to exclude Plaintiff's only or preferred method of proving the accident caused his injury, thus resulting in summary judgment for Defendants; it is unclear what more Finley could have done. Many personal injury plaintiffs who are injured in automobile accidents are unable to introduce medical records or other evidence that affirmatively prove the cause of their injuries and outright disprove other potential causes. Perhaps Finley could have retained a capable causation expert, like that of the Defendants, to create a model of the accident and attest that an accident of the kind that he experienced could cause his injury. But I am uncertain as to why that testimony should be treated as inherently more reliable and admissible than Dr. Doig's. That is not to say that the admissibility standards for expert opinion should be relaxed in cases where obtaining an unimpeachable causation opinion proves difficult if not impossible. Rather, we should focus, as *Daubert* demands, on the reliability of the methodology and not the conclusion, even if the conclusion seems plausible as opposed to conclusive. Finley may not prevail on his claim. But that is for the factfinder, not the district court or this Court, to decide.

For these reasons, I would vacate the grant of summary judgment to Defendants, reverse the district court's ruling on Dr. Doig's testimony, and allow the parties to make their cases at trial.